## JOSEPHUS F. RUFF *v.* WALTER R. MONTGOMERY.

1. PRINCIPAL AND SURETY.   *Discharge of one surety.*   Code 1892, § 3276. *Contribution.   Res adjudicata.*

     A judgment discharging a surety by reason of his release under the statute (Code 1892, § 3276), prescribing that such a result shall attend a failure on the part of the creditor to sue within a designated time when requested by a surety in writing to do so, will, the judgment not having been appealed from, bar a proceeding for contribution by a co-surety held liable in the same judgment.

2. SAME.   *Appeal.   Aggrieved party.   Who is.*

     A party is aggrieved by a judgment or decree when it operates on his rights or bears directly on his interest, and may appeal therefrom.

3. SAME.   *Co-sureties.*

     Where a judgment in a suit by the creditor is rendered against one surety and in favor of another, the surety held liable may appeal and contest the rightfulness of his co-sureties's discharge.

4. SAME.   *Discharge of one.*

     The discharge of one surety under the statute, Code 1892, § 3276, does not discharge his co-sureties.   *Ramey* v. *Purvis*, 39 Miss., 499.

FROM the circuit court of Marshall county.
HON. PERRIN H. LOWREY, Judge.

Ruff, appellant, was plaintiff in the court below; Montgomery, appellee, was defendant there. From a judgment in defendant's favor, the plaintiff appealed to the supreme court. The facts are fully stated in the opinion of the court.

*C. Lee Crum,* for appellant.

The suit of *Blackard* v. *Rhea, Montgomery and Ruff* and the judgment therein against Rhea and Ruff, which released Montgomery, does not render the issue joined in this case of *Ruff* v. *Montgomery* for contribution as a co-surety, *res adjudicata.*

First. The causes of action are entirely different. In that case, as in this, the law of pleadings of common law courts prevailed except the pleadings are largely *ore tenus,* and the only issue that the note sued on raised, or that legally could have been raised in that court, was whether the defendants therein, Rhea, Montgomery, and Ruff, were jointly and severally liable to Blackard, the plaintiff, on the note sued on and in what amount. It was a trial of the issue joined between each of the defendants and the plaintiff; and there was no issue, and under the law of pleadings in such cases, could have been no issue then joined between codefendants, Ruff, Montgomery, and Rhea, for at that time Ruff had no cause of action against Montgomery; Ruff had not then paid more than his pro rata share of the note sued on, and his right of action as against Montgomery for contribution had not then accrued and did not then exist. 24 Am. & Eng. Enc. Law, 809; *Wells* v. *Miller,* 66 N. Y., 225; *Apperson* v. *Wilbourn,* 58 Miss., 439.

Second. The parties to the first suit and the one at bar are different. In the first suit no issue was joined, or could have been joined between the codefendants, Montgomery and Ruff. The only issue was between Blackard on one side and several defendants on the other. Here the issue is directly between Montgomery and Ruff.

The issue in the suit at bar cannot be *res adjudicata,* because the note sued on by Blackard was a joint and several obligation,

Code 1892, § 2353. The judgment thereon must of necessity be several as well as joint. Being several on appeal from the judgment of the justice of the peace by Ruff would not in any way affect the judgment releasing Montgomery, and if the judgment had been wholly joint and not several, still the judgment releasing Montgomery would have been held good in the justice court.

The case of *Roberts* v. *Weiler,* 52 Miss., 299, is exactly in point.

The case last cited is conclusive that an appeal by Ruff in the case of *Blackard* v. *Rhea et al.,* would not have brought either Rhea or Montgomery into the circuit court, but would have left the judgment discharging Montgomery in full force.

The proposition that Ruff had no rights to assert against Montgomery until he had paid more than his half of the note under legal process, seems to me axiomatic, but I call the court's attention to the following authorities on the subject: 4 Am. & Eng. Enc. Law, 2; *Washington* v. *Norwood* (Ala.), 30 So. Rep., 405.

Again, on the question as to when the right of action of Ruff accrued, I call the court's attention to the case of *Pass* v. *Grenada Co.,* 71 Miss., 426, in which the court holds that the statute of limitations does not begin to run on a cause of action for contribution between co-sureties until the surety has paid more than his part of the debt; that the surety's right of action arises on payment of the debt, which discharges the other sureties from liability. *Magee et al.* v. *Leggett,* 48 Miss., 139.

*W. A. Belk,* for appellee.

First. Ruff, the plaintiff below, had his remedy by appeal to the circuit court, and there the case would have been tried *de novo.* Code 1892, §§ 82, 85. Having failed to appeal, he now has no standing in court. *Eskridge* v. *Rutland,* 77 Miss., 787.

Ruff was a direct party to the suit and had his remedy by appeal as much so as the plaintiff or any other party to the

suit had.   The case of *Roberts* v. *Weiler,* 52 Miss., 299, cannot apply here.   In that case an affidavit, under Code 1871, § 1332, was necessary to an appeal.   Such is not the requirement under Code 1892, § 82.   In that case there was a judgment entered against all the defendants in common.   They had no conflicting interests one with the other.

2 Enc. of Pl. & Pr., p. 161, says: "An appealable interest exists when the judgment or decree so affects a party or privy to the record that he would derive a substantial benefit from its modification or reversal."

"A surety may appeal even when his principal is not complaining."   *Patterson* v. *Gathings,* 48 Miss., 641.

Second.   When is a judgment *res adjudicata?*

"A judgment or decree is conclusive between the parties and privies both as to the law and the facts directly in issue not only as to the rights of the parties in the particular suit, but as to every fact which is positively or by necessary implication, affirmed."   *Land* v. *Keirn,* 52 Miss., 341.   Certainly the fact as to whether or not Montgomery was to be released was one which was "postively affirmed" by the judgment rendered against Ruff by the magistrate.

Was not Montgomery's release a "material part" of the suit? How could McCauley, the justice, tell against whom he should render judgment until he first settled the question of Montgomery's release?   If Montgomery was not to be released, then judgment must go against him along with the judgment against the other two defendants, Rhea and Ruff.   If he shall be released, then the judgment must not go against him.   Hence, the question of his release was one vitally connected with the case, and one which the justice was compelled to decide when raised.   He decided it in favor of Montgomery, and as no appeal was taken by any one, and as the point thus settled was of the "essence of the case" the judgment was, under the doctrine just laid down, *supra* in *Lorance* v. *Platt, res adjudicata.*

The magistrate who tried the case had full jurisdiction in

the premises. Indeed the bill of exceptions admits this fact. Then if he had jurisdiction his acts are a verity and are entitled to full faith and credit. *Hughston* v. *Cornish,* 59 Miss., 374. He then had the right to decide every question involved and the decision so rendered by him must stand until reversed. The true rule is "The judgment of a court having jurisdiction of the subject-matter and parties, is conclusive so long as not reversed and cannot be attacked collaterally." *Moore* v. *Ware,* 51 Miss., 206; *Parisot* v. *Green,* 46 Miss., 747; Black on Judgments, sec. 218, p. 265; *Ib.,* sec. 244; *Ames* v. *Williams,* 72 Miss., 760.

WHITFIELD, C. J., delivered the opinion of the court.

Blackard, the payee in a promissory note, sued Rhea the maker and Ruff and Montgomery, Rhea's sureties on said note, before a Justice of the Peace. Montgomery plead notice and release under § 3276 of the code of 1892; the pleadings, of course, were not in writing. All the parties were present at the trial in the court of the Justice of the Peace. Judgment was rendered by the Justice of the Peace releasing Montgomery on the ground that he had given due notice under the statute; this recitative being made in the face of the judgment. The Justice of the Peace rendered judgment against Ruff for the amount claimed, less a certain off set of about fifty dollars allowed Ruff. No appeal was taken by any party from that judgment to the circuit court. Ruff afterwards paid off the judgment, and then brought a suit at law against Montgomery for contribution in the court of the said Justice of the Peace. This cause was tried and appealed to the circuit court, where judgment was rendered in favor of Montgomery, and Ruff appeals to this court.

Montgomery's defense was that the judgment in the first suit before the Justice of the Peace, releasing him from all liability, is a bar to any recovery against him by Ruff for contribution, the said judgment of the Justice of the Peace standing unre-

versed. Ruff should have appealed from the judgment of the Justice of the Peace, holding him and releasing Montgomery. On such appeal there would have been presented for decision not only the right of the creditor to hold Ruff but the rightfulness of the release of Montgomery. Ruff, had the right, necessarily, to have that question also examined and determined on appeal, because of the fact that the release of Montgomery directly affected the measure of Ruff's liability to Blackard, the plaintiff. He had an appealable interest in the rightfulness of the determination of the Justice of the Peace in discharging Montgomery. As said in 2 Cyc., page 633: "In legal acceptation a party is aggreived by a judgment or decree when it operates on his rights of property or bears directly upon his interest." See also, *Humphrey* v. *Hunt,* 59 Pac. Rep., 971; and *Ballard* v. *Kennedy,* 16 So. Rep., 327 (decided Nov. 1894), where it was held that "where the heirs at law of a deceased mortgagor have been made parties defendant, along with the administrator of the decedent, to a bill for foreclosure of a mortgage upon the lands of the deceased and have had their pleadings to such bill stricken out, and the bill has been dismissed as to them, a final decree, however, being rendered against the administrator alone, such heirs at law are so affected by such final decree, under the law in Florida, as to give them the right to an appeal from such final decree, though they are not named as parties thereto." And see *Atkinson* v. *Foxworth,* 53 Miss., 739.

The extent of Ruff's liability was directly affected by Montgomery's discharge, and the relation between Ruff and Montgomery was such arising out of their suretyship contract, and the principles of contribution flowing therefrom, that it would have been perfectly proper on the appeal to have determined the rightfulness of Montgomery's discharge.

This being so the judgment constitutes a bar to any recovery from Montgomery as properly held by the circuit judge. This

point is settled in the case of *Ramey* v. *Purvis,* 38 Miss., where the court say:

"But is it contended that the discharge of one surety must work a discharge of the other, because the claim for contribution which the latter, in case of payment of the debt by him, had against the former, by virtue of the original obligation, is thereby destroyed. If this be conceded to be true, it does not show that the surety, failing to avail himself of the privilege authorized by the statute, is discharged by the act of his co-surety. For the statute provides how one surety may be discharged. It authorizes the discharge of one surety in a particular manner, and is silent as to the liability of others; and it is, in respect to the objection under consideration, tantamount to authority given to the creditor to release one of two sureties in a specified mode. It was, then, a part of the law in relation to the rights of sureties; and the contract of suretyship must be considered as having been entered into with reference to it, and the rights of the parties to it be governed by it; for the statute incorporated into the revised code, and which thereby appears to be of subsequent date to this note, is in substance but a re-enactment of the statute of 1854, ch. 27. Hence if the effect of the discharge of the surety Thompson be to leave his co-surety, who is not discharged from the plaintiff's claim, without remedy for contribution against him, it is a result produced by the statute, allowing one surety to be discharged without affecting the creditor's claim against his co-surety. The contract of the sureties was entered into subject to the rule established by the statute, which governs both their liabilities and their rights, and the statute cannot be held to prejudice the rights of the creditor further than its positive provisions require."

*Affirmed.*